**UNITED STATES of America,**
**Appellant,**

v.

**William D. FRAZELL and Martha T.**
**Frazell, Appellees.**

**No. 20758.**

United States Court of Appeals
Fifth Circuit.

Aug. 5, 1964.

Hutcheson, Circuit Judge, dissented.

Edward L. Shaheen, U. S. Atty., Shreveport, La., Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Harry Baum, Michael I. Smith, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., for appellant, E. V. Boagni, Asst. U. S. Atty., of counsel.

W. Scott Wilkinson, Shreveport, La., for appellees.

Before TUTTLE, Chief Judge, and HUTCHESON and GEWIN, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal by the Government from a judgment in favor of the taxpayer. Frazell v. United States, W.D.La. 1963, 213 F.Supp. 457. As the largely undisputed facts are set out at length in the opinion of the district court, only a summary will be presented here. On February 9, 1951, William Frazell, a geologist, entered into a contract with the N. H. Wheless Oil Company, a partnership, and W. C. Woolf, under which Frazell was to check certain areas to determine whether potentially productive oil and gas properties might be procured there. He was to recommend those properties he found suitable to Wheless and Woolf, and upon their joint approval, he was to attempt to acquire such properties, taking title thereto in the names of Wheless and Woolf in equal shares. In return for these services, Frazell was to receive "a monthly salary or drawing account," plus expenses, and specified interests in the property acquired. It was agreed, however, "that Frazell shall not be entitled to, nor shall he be considered as owning, any interest in said properties until such time as Wheless and Woolf shall have recovered their full costs and expenses of said properties" including the amounts paid out to Frazell. 213 F.Supp. at 470.

The arrangement proved successful, and it was evident in the early part of 1955 that Wheless and Woolf would fully recover their costs and expenses by the end of November of that year. In April 1955, the 1951 contract was terminated, and by contract dated April 20, 1955, all the properties acquired under the earlier arrangement were transferred to the W.W.F. Corporation, a Delaware corporation formed specifically to acquire these properties in return for the issuance of debentures to Wheless and Woolf and of stock to Wheless, Woolf, and Frazell. Frazell received 6,500 shares of W.W.F. stock (13% of the total issued), having a fair market value of $91,000.00, but he included no part of this amount in his 1955 income tax return. The Commissioner ruled that the $91,000.00 should have been included in income and assessed a deficiency, which Frazell paid under protest and seeks to recover here.

Frazell contends that he received the W.W.F. stock in a tax-free exchange within the terms of section 351(a), Internal Revenue Code of 1954. That section provides:

> "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control * * * of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property."

The district court agreed that section 351(a) is applicable in this case. This was said to follow from that court's finding that the 1951 contract created a "joint venture" among the three participants. 213 F.Supp. at 468. We take no issue with the trial court's finding of fact in this matter, but it does not follow from the categorization of the 1951 arrangement as a "joint venture" that the April 1955 transactions resulted in no taxable income to Frazell.

▮ It is fundamental that "compensation for services" is taxable as ordinary income under the Internal Revenue Code of 1954. I.R.C.1954 § 61(a) (1). This principle applies whether the one compensated for his services is an employee receiving a salary, fees, or commission (ibid.), one receiving corporate securities (I.R.C.1954 § 351(a)), or a "service partner" receiving an interest in the partnership. (I.R.C.1954 § 721; Treas.Reg. § 1.271–1(b) (1)).

▮ The regulation pertaining to partnerships provides that

> "the value of an interest in such partnership capital so transferred to a partner as compensation for services constitutes income to the partner under section 61. The amount of such income is the fair market value of the interest in capital so transferred * * * at the time the transfer is made for past services. * * * The time when such income is realized depends on all the facts and circumstances, including any substantial restrictions or conditions on the compensated partner's right to withdraw or otherwise dispose of such interest."

This rule would have been directly applicable had the 1951 contract continued in effect through November 1955, the date on which Wheless and Woolf would have fully recovered their costs in the venture. The contract made it clear that Frazell would "not have the right to dispose of any rights which may accrue to him" before those costs were recovered. 213 F.Supp. at 472. But after November, he would have received a largely unrestricted [1] interest in about 13% of the partnership properties. That this interest was primarily, if not entirely, in return for Frazell's services to the enterprise is undisputed. Thus, so much of the inter-

---

1. Even after Wheless and Woolf recovered their costs, the contract gave them a right of first refusal should Frazell de-  sire to dispose of any of his interests in the properties in question.

est Frazell was to receive in November 1955 as could be attributed to his services for the oil venture would have been ordinary income to him in the year of receipt.

The applicable rule is in no way changed by Frazell's contention that his interest in the enterprise was a "carried interest." There are three recognized varieties of "carried interest," and each "may be created under varied circumstances, e. g., * * * as compensation for services rendered, e. g., by a geologist. * * *" Williams & Meyers, Oil and Gas Law, vol. 2, § 424 (1959). The interest created by the 1951 contract most nearly fits into the "Menahan" category of "carried interests;" that is, "a springing executory interest * * * conveyed by the carrying party [Wheless and Woolf] to the carried party [Frazell], such interest to become possessory upon the satisfaction of * * * [the carrying party's] costs." Williams & Meyers, op. cit. supra § 424.1, p. 423. Even if Frazell is taken to have had some sort of interest in the properties in question from their first acquisition, his interest would not have become possessory until November 1955. Under Treasury Regulation § 1.721–1(b) (1), the value of that interest would have been taxable to him at that time. See also Anderson & Coffee, "Proposed Revision of Partner and Partnership Taxation: Analysis of the Report of the Advisory Group on Subchapter K," 15 Tax L.Rev. 285, 318 (1960).

The fact that the contract was terminated prior to November 1955 should have no effect on the tax consequences of Frazell's arrangements. The transactions of April 1955 may be viewed in either of two ways: (1) If Frazell's partnership interest became possessory immediately upon the termination of the 1951 contract, so much of that interest received as compensation for services was taxable to him under the rule of Treasury Regulation § 1.721(b) (1). Thereafter, the transfer of his interest for W.W.F. stock was tax-free under section 351(a). (2) If the $91,000.00 of W.W.F. stock was given in substitution for the partnership interest originally contemplated, so much of that stock received in compensation for services was taxable to Frazell under section 351(a). As either view of the 1955 transactions results in ordinary income to Frazell there is no reason for us to split hairs and choose between them.

This is not to say that the full $91,000.00 is ordinary income. The trial court found that, just as Wheless and Woolf contributed large amounts o. capital, "Frazell supplied to the venture a very valuable oil map which was his private property." 213 F.Supp. at 461. Indeed the record shows that prior to entering into the 1951 contract Frazell had acquired several maps which apparently proved very helpful to the work of the venture. Among the reasons given by Mr. Wheless for desiring to employ Frazell was that "he had accumulated maps, geological data and various information that was valuable to the arrangement that it would have taken a long time for someone else just moving into the territory to accumulate." And Frazell himself testified that he "had contributed considerable information and maps which resulted in the discovery and production of oil. * * *" Although it is clear that the greater part of the 13% interest received by Frazell was received as compensation for services, the court's finding and the cited testimony suggest that some part of that interest might have been received in return for "property;" namely, the maps. That part of the property Frazell received in 1955 attributable to his contribution of maps is not taxable in 1955 no matter whether we view the interest received as a partnership interest vesting on the termination of the 1951 contract (I.R.C.1954 § 721) or as shares of W.W.F. stock given in substitution therefor. (I.R.C. 1954 § 315(a)). See Treas.Reg. § 1.-351–1(2), example 3; Mertens, The Law of Federal Income Taxation, vol. 6, § 35.37, pp. 108–09.

Before the nonrecognition rule can be applied to the maps in this case,

however, two factual determinations must be made: (1) Did Frazell contribute the maps in question to the oil venture or did he keep them as his own personal property? (2) If he contributed them to the venture, what was their value at the time they were contributed? As the burden of proof on both of these issues lies with the taxpayer, it might be argued that he is foreclosed in these issues because of the silence of the record on these points. However, we prefer to remand the case to the district court to permit it to make findings on these two issues. This disposition is in accord with the action of this court in a number of recent cases. E. g., Bisbee-Baldwin Corp. v. Tomlinson, 5 Cir. 1963, 320 F.2d 929.

The judgment is therefore reversed and the case remanded to the district court to determine whether the maps introduced at the original trial were contributed by Frazell to the oil venture created by the 1951 contract. If the court finds that the maps were so contributed, it shall determine their value as of the time of their contribution. Such part of $91,000.00 as exceeds the value of the maps as determined by the trial court is properly taxable to Frazell as ordinary income.[2]

Reversed and remanded.

HUTCHESON, Circuit Judge (dissenting).

This is an appeal from a judgment of Judge Dawkins in a taxpayer's suit for refund. The judgment is based upon a careful opinion by Judge Dawkins, reported in 213 F.Supp. 457. I was, and am, of the opinion that we should affirm per curiam on that opinion.

The district court's determination was that the transaction which gave rise to the litigation was a tax free exchange of property for stock within the meaning of Sec. 351(a) 1954 Code, and the attack

of the appellant on the opinion and judgment largely turns on Louisiana law.

It seems to me that the district judge's opinion is incontrovertible, that the contentions of the appellant are technical and unsubstantial, and that the majority opinion is not a correct statement of the law. I, therefore, dissent from it.

---

2. The parties have stipulated that the initial computation of any refund that may be due will be made by the Internal Revenue Service. It is expected that such computation will be made in light of all relevant Code provisions, including section 1301.