**D. N. STAFFORD and Flora C. Stafford, Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 76-1-VAL.**

United States District Court, M. D. Georgia, Valdosta Division.

June 14, 1977.

Earl T. Berry, of Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for plaintiffs.

John F. Murray and John A. Townsend, Tax Div., Dept. of Justice, Washington, D. C., Edgar W. Ennis, Jr., Asst. U. S. Atty., Macon, Ga., for defendant.

## OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ELLIOTT, Chief Judge.

This is an income tax refund action to recover certain taxes and interest paid by the Plaintiffs for the tax year 1969. In that year D. N. Stafford (hereinafter "Stafford") received an interest in a partnership. Pursuant to Section 721 of the Internal Revenue Code the receipt of a partnership interest in return for property is not subject to tax, but this exclusion does not apply where the partnership interest is received in return for services. The issue here presented is whether Stafford received the partnership interest in return for property (as he contends) or whether he received it in return for services (as the Defendant contends). There does not appear to be any controversy concerning any material fact and the case is before the Court on cross motions for summary judgment.

During the 1960's the corporate officers of the Life Insurance Company of Georgia (hereinafter "LOG") developed a desire to have a hotel built adjacent to the Life of Georgia Tower in Atlanta, which was the home office for LOG. Stafford had been in the business of developing and leasing motels in the southeastern United States for a number of years and his reputation in this regard was known to LOG officers. Stafford entered into negotiations with LOG concerning the development of the hotel. He was acting alone and solely in his own behalf in pursuing these negotiations. In February, 1967 the Finance Committee of LOG authorized negotiations with Stafford and approved in principle the negotiations which had already taken place between the officers of the company and Stafford. In July, 1968 the Executive Vice President of LOG sent Stafford a letter indicating that (1) LOG would grant to Stafford or his designee a net ground lease for a term of thirty years; (2) the lease would obligate Stafford to construct the hotel; and (3) LOG would make a first mortgage loan on the improvements equal to seventy-five percent of the cost of construction at an annual interest rate of 6¾ percent on the first $5,000,000. Within the time specified for acceptance of this proposal Stafford responded by letter indicating his acceptance. LOG intended to be bound by the terms of the offer made to Stafford and Stafford likewise considered himself bound by his acceptance.

Throughout the negotiations for the lease and loan agreement Stafford was not employed by any other person or entity. Although the officers of LOG and Stafford himself contemplated that some entity such as a corporation or partnership would eventually be formed to complete the construction and operate the hotel, yet all of Stafford's efforts were on his own account. It was not until later that additional investors were sought and a partnership formed.

In October, 1968 information was sent out to potential investors who might desire to participate in a limited partnership to build the hotel, it being noted that there would be 19 limited partners and one general partner (Stafford). It was further stated that Stafford would deliver to the partnership the lease, the construction loan and the permanent financing "for what amounts to $100,000 of additional participation".

In January, 1969 a limited partnership known as Center Investments, Ltd. was formed with Stafford as the only general partner. Twenty limited partnership units were sold for $100,000 each, two of which were purchased by Stafford, and a twenty-first unit was issued to Stafford in exchange for the assignment by Stafford to the partnership of the agreement to lease and the loan commitment by LOG as set forth in the July, 1968 letter. The partnership agreement stated that the consideration for that interest was Stafford's contribution of "property worth $100,000". This was the understanding and intent of the partners, and as consideration for this additional partnership interest Stafford did execute an assignment to the partnership of the agreement to lease and loan commitment by LOG. Clearly, the assigned items had considerable value. The lease itself was highly economic, and interest rates had been rising and had even reached 9¾ percent by the time the loan was actually closed. Thus the agreement to lend Five Million Dollars for thirty years at 6¾ percent, alone, had a substantial value.

For his services in supervising the construction of the hotel and its subsequent operation Stafford was paid a salary by the partnership.

The Defendant assessed a deficiency against the Plaintiffs for the 1969 taxable year on the basis of a determination that the receipt of the partnership interest by Stafford was taxable income in the amount of $100,000 for services rendered. The Plaintiffs paid the assessment of $78,475.82, including principal and interest, filed a timely claim for refund and, upon disallowance of the claim, filed this suit.

Section 721 of the Internal Revenue Code provides:

"No gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership."

A similar provision concerning transfers to corporations is contained in Section 351. Both of these Sections have the same basic purpose of deferring a taxable event when one receives a proprietary type interest in a partnership or corporation in exchange for property. The term "property" which is used in both Sections is not defined in the statute or in the regulations. The courts have simply defined it on a case-by-case basis and the word has been given an expansive definition. In *E. I. Dupont de Nemours and Company v. United States,* 471 F.2d 1211, 200 Ct.Cl. 391 (1973), the Court stated that "Unless there is some special reason intrinsic to the particular provision . . . the general word 'property' has a broad reach in tax law", noting that nothing in the legislative purpose of the statute indicated that the term should be given a narrow reading (pp. 1218 and 1219).

"Property" can be real or personal, tangible or intangible, and a person has a property right in something if he has the right to possess it, use it and dispose of it. In this case Stafford possessed a commitment for a long term lease and a favorable loan and he could have used it himself or he could assign it to another.

The Defendant contends that the exchange of letters between LOG and Staf-

ford did not constitute a legally enforceable contract and therefore could not be "property". Whether the agreement was legally enforceable could have been determined only if litigation had been necessary. Such litigation did not occur because all parties considered themselves bound and performed accordingly. Actually, it is likely that if litigation had been necessary the Georgia courts would have held that if the letters in themselves did not constitute a complete contract they, nevertheless, became such in conjunction with oral agreements and related actions of the parties, because under the law of this State a complete and binding contract results from correspondence if, in point of fact, the parties treat and regard the correspondence as a contract. See *Harris & Mitchell v. Amoskeag Lumber Co.*, 97 Ga. 465, 25 S.E. 519 (1895). However, it is the Court's view that whether the agreement was or was not legally enforceable is immaterial. The record is clear that LOG and Stafford had a meeting of the minds, they entered into an agreement, they each felt that they were bound by the agreement, and they ultimately performed according to its terms.

This case is quite similar to *Ungar v. Commissioner*, 22 T.C.M. 766 (1963), where the taxpayer negotiated an agreement to purchase a piece of real estate and later assigned the agreement to a corporation in exchange for stock in the corporation, and in which case the Tax Court rejected the Commissioner's contention that the taxpayer received the stock in exchange for services rendered and not in exchange for property. Here Stafford had a favorable agreement which he assigned in exchange for an interest in the partnership. The Defendant relies primarily upon *United States v. Frazell*, 335 F.2d 487 (5 Cir. 1964) and *James v. Commissioner*, 53 T.C. 63 (1969), but the facts in both of those cases differ materially from those in this case in that in both *Frazell* and *James* an interest in a corporation had been received in payment for services preformed by the taxpayer for the corporation or for other shareholders pursuant to a prior agreement with them.

 The Court concludes that the lease and loan agreement at rates substantially below existing market levels which Stafford assigned to the partnership in exchange for a partnership interest constituted property within the meaning of Section 721 of the Internal Revenue Code in connection with which no gain or loss was recognizable. Accordingly, the Defendant's motion for summary judgment is denied and the Plaintiffs' motion for summary judgment is granted. Counsel for the Plaintiffs will submit a form of judgment to be entered.

IT IS SO ORDERED this 14th day of June, 1977.