MARK IV PICTURES, INC., ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Mark IV Pictures, Inc. v. Commissioner
Docket Nos. 7447-87, 7448-87, 7449-87
United States Tax Court
T.C. Memo 1990-571; 1990 Tax Ct. Memo LEXIS 643; 60 T.C.M. (CCH) 1171; T.C.M. (RIA) 90571; October 31, 1990, Filed *643 Decisions will be entered under Rule 155. Ronald L. Sutphin and Mark W. Beerman, for the petitioners. Alan M. Jacobson and James E. Cannon, for the respondent. PARR, Judge. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined that petitioners in these consolidated cases were liable for the following Federal income tax deficiencies: Petitioners Year Ended
Deficiency
Mark IV Pictures, Inc.
January 31, 1979
$ 5,402
January 31, 1980
114,932
January 31, 1981
170,051
January 31, 1982
51,849
Russell S. Doughten, Jr.
and Gertrude S. Doughten
December 31, 1981
180,015
Heartland Productions, Inc.
January 31, 1982
42,690
The threshold issue we must decide is whether petitioners (except Gertrude S. Doughten) contributed property, services, or some combination of both in exchange for general partnership interests in certain limited partnerships. If we conclude that any services were contributed, we must then decide: (1) Whether the general partnership interests received by petitioners were capital interests; (2) whether such interests had determinable market values; and (3) whether section 83 applies and operates to preclude income recognition by petitioners. FINDINGS OF FACT The parties stipulated *644 certain matters, including facts and exhibits, which are treated as conclusive admissions in this case. See Rule 91(e). [2] We incorporate all stipulated matters herein to the extent we do not discuss them. Russell S. Doughten, Jr. (Doughten) and Gertrude S. Doughten resided in Carlisle, Iowa, and the businesses of Mark IV Pictures, Inc. (Mark IV) and Heartland Productions, Inc. (Heartland) were principally placed in Des Moines, Iowa, when their respective petitions were filed with the Court. Mark IV and Heartland were incorporated under Iowa law in 1972 and 1965, respectively. Both corporations were involved in the business of producing and distributing motion pictures. During the years in issue, Doughten and Donald W. Thompson (Thompson) each owned one-half of Mark IV's stock. Doughten also owned stock in Heartland, which was a public corporation. Doughten was president of Mark IV and Heartland, and Thompson was vice-president of Mark IV. The following limited partnerships *645 were formed under Iowa law for the purpose of producing, distributing, and exhibiting motion pictures with religious themes: Date Partnership
Motion Picture
Partnership Formed
Title Police Co.
Aug. 20, 1979
Heaven's Heroes
Image of the Beast Co.
Sept. 3, 1980
Image of the Beast
Obedience Co.
Aug. 3, 1981
Home Safe
Brother Enemy Co.
June 1, 1981
Brother Enemy
Face in the Mirror Co.
Oct. 10, 1981
Face in the Mirror
Mark IV was a 50-percent general partner of Police Company, Image of the Beast Company, and Obedience Company. Heartland and Doughten were general partners of Brother Enemy Company and Face in the Mirror Company. Heartland owned 24.5 percent and Doughten owned 25.5 percent of the total general partnership interests in each partnership. Mark IV, Heartland, and Doughten (the general partners) performed similar services and functions for their respective limited partnerships, including funding and forming the partnerships, producing the motion pictures, and releasing and distributing the films. Doughten served as co-writer and executive producer for Mark IV, and as writer, producer, and director for Heartland. Thompson served as writer, producer, and director of motion pictures for Mark IV. *646 Mark IV paid salaries to Doughten and Thompson for their services, and Heartland compensated Doughten for his services. The general partners developed or otherwise obtained rights to the original story ideas and prepared the scripts for each motion picture before any of the limited partnerships were formed. Doughten and Thompson created the original story ideas for "Image of the Beast" and "Home Safe" on behalf of Mark IV. Doughten created, with the assistance of his employees, the original story ideas for "Brother Enemy" and "Face in the Mirror" for himself and on behalf of Heartland. On June 1, 1979, Mark IV licensed the story rights to "Heaven's Heroes" for an initial payment of $ 1,000, and a royalty equal to 5 percent of Mark IV's net profits as general partner of Police Company, beginning with the first quarterly report after release of the picture. Doughten and Thompson prepared, with the assistance of employees, all scripts for all three Mark IV productions. Doughten, with the assistance of employees, prepared the scripts for the two Heartland/Doughten productions. Each partnership raised funds to pay for the anticipated costs of making their motion pictures by issuing *647 limited partnership units to investors for cash. Total contributions from limited and general partners [3] were as follows: Partnership
Total Contributions
Police Co.
$ 200,000  Image of the Beast Co.
360,000
Obedience Co.
285,000
Brother Enemy Co.
266,500
Face in the Mirror Co.
325,000
A number of transactions took place between the general partners and each of their limited *648 partnerships. The terms of each of the transactions were not arrived at through arm's-length negotiating, but simply represented what the general partners believed was fair and reasonable. First, the general partners assigned their film rights to their respective limited partnerships. The value of each original story idea and script was never expressed or determined by the general partners in a specific dollar amount. However, the offering circulars of the partnerships state that general partnership interests (50 percent) were issued to the general partners in exchange for the assignment of film rights. Second, the limited partnerships paid the general partners for producing the motion pictures. However, there was no written contract between the general partners and their limited partnerships governing the production of the motion pictures. The amounts paid by the limited partnerships were based upon what the general partners believed was a reasonable charge for the productions. The amounts paid included reimbursement for costs incurred by the general partners in making the films (referred to as pre-production, production, and post-production expenses), and also additional production *649 fees, as follows: Reimbursement Pre-
Post-
Production
Partnership
production
Production
production
Fee
Police Co.
$ 11,099.84
$ 123,654.14
$ 39,054.51 $ 45,000.00
Image of the
Beast Co.
19,779.80
301,469.12
64,916.66
45,000.00
Obedience Co.
22,480.44
193,246.11
22,870.96
50,000.00
Brother Enemy Co.
31,832.46
158,995.46
19,505.90
52,000.00
Face in the
Mirror Co.
35,849.44
152,245.39
24,871.12
52,000.00
Third, the limited partnerships paid their general partners for exhibiting and distributing the motion pictures. Each limited partnership agreed to pay the general partners 25 percent of any amounts received by the limited partnership from the distribution or exhibition of their motion picture through film libraries. Film libraries are privately-owned businesses that exhibit and distribute spiritual motion pictures. In distributing a motion picture, a film library would rent it to a customer for an agreed amount. In exhibiting a motion picture, a film library would actually show the picture generally for an admission price per viewer. Finally, the offering circulars for Obedience Company, Brother Enemy Company, and Face in the Mirror Company state that their general partners would be paid one percent of gross income *650 of the partnership in return for administrative and related services. It is unclear why the offering circulars for Police Company and Image of the Beast Company do not also provide for the one-percent payment, since the general partners were also to provide administrative and related services for those entities. The general partners contributed no goodwill to their respective partnerships, and were allowed to compete with the partnerships by producing, distributing, and exhibiting motion pictures with religious themes. The Articles of Limited Partnership (Articles) for each of the limited partnerships describe the nature of their general partnership interests (with variation only as plural and singular use of the term general partner and the number of limited partnership units sold in each) as follows: 2.3 Capital Units. The Partnership capital shall consist of (1) * * * units, and (2) the General Partner's interest. * * * The Partnership shall be allocated between the capital units and the General Partner's interest according to the definition of the General Partner's Interest as set forth in Article 2.4; that portion of the Partnership capital allocated to the capital units shall *651 be further allocated among the capital units on a pro rata basis. * * * 2.4 General Partner's Interest. * * * [In general,] the General Partner's interest shall participate in profits and losses to the extent of Fifty Percent (50%) thereof. The General Partner's Interest shall be entitled to receive Fifty Percent (50%) of the liquidation proceeds of the Partnership in the event of its liquidation. * * * 9.2 Liquidation and Distribution. Upon termination of the Partnership, the assets of the Partnership shall be liquidated as promptly as possible. The proceeds of the liquidation shall be distributed, as realized, in the payment of liabilities of the Partnership in the order provided in Section 545.42 of the 1979 Code of Iowa, as amended. The General Partner shall have the right to wind up and liquidate the Partnership by selling the Partnership assets, and after satisfying or paying all of the Partnership debts and liabilities, distributing the remainder of the net proceeds therefrom to each Partner in the proportion to which said Partner is entitled to share in Partnership income.
The general partners reported their assignment of film rights to the partnerships as nontaxable contributions *652 of property in exchange for general partnership interests. In his notices of deficiency, respondent determined that the general partnership interests received by the general partners were capital interests representing additional compensation for services rendered to the partnerships. OPINION I. What did the general partners contribute?
The threshold issue we must decide is whether the general partners contributed property, services, or some combination of both in exchange for general partnership interests in certain limited partnerships. Section 721(a) provides that no gain or loss is recognized to a partnership, or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership. The nonrecognition treatment provided by section 721(a) does not apply to the contribution of services. Diamond v. Commissioner, 56 T.C. 530, 544-545 (1971), affd. 492 F.2d 286 (7th Cir. 1974); sec. 1.721-1(b)(1), Income Tax Regs.
Petitioners argue that the general partners assigned film rights and goodwill to their respective limited partnerships in exchange for general partnership interests. Respondent argues that no goodwill was transferred *653 to the partnerships, and that the general partners received their partnership interests in exchange for services performed for the limited partnerships and not in exchange for the contribution of film rights. The nonrecognition treatment provided by section 721 only applies to the extent that property is contributed in exchange for a partnership interest. United States v. Stafford, 727 F.2d 1043, 1055 (11th Cir. 1984); sec. 1.721-1(b)(1), Income Tax Regs. The determination of whether a taxpayer contributed property, services, or some combination of both in exchange for a partnership interest is a question of fact. United States v. Stafford, supra at 1054; United States v. Frazell, 335 F.2d 487, 490-491 (5th Cir. 1964).See James v. Commissioner, 53 T.C. 63, 69 (1969).A taxpayer bears the burden of proving that property was actually contributed to a partnership and the value of such property at the time of contribution. United States v. Stafford, supra at 1054-1055; United States v. Frazell, supra.See Rule 142(a). We first consider whether the general partners actually transferred goodwill to their partnerships. Although goodwill is an unenforceable right, it may be considered property *654 for purposes of section 721. See United States v. Stafford, supra at 1052.
If goodwill is associated with a going business that is transferred to a partnership, there should be no question about the applicability of section 721. Furthermore, even if goodwill is associated with an individual who will remain active in the transferred business, an effective contribution of goodwill may be made. * * * If goodwill is personal to the transferor-partner, however, great care should be taken to assure that the goodwill is effectively transferred to the partnership, rather than the mere right to use the goodwill so long as the transferor remains a partner. At a minimum, the transfer should be supported by a covenant not to compete.
W. McKee, W. Nelson & R. Whitmire, Federal Taxation of Partnerships and Partners, Vol. 1, par. 4.02[1], p. 4-8 n. 18 (1977). (Emphasis added.) See secs. 1.721-1(a) and 1.707-1(a), Income Tax Regs. (distinguishing between contributing property and allowing a partnership to use property.) The record contains no credible evidence in support of petitioners' claim that the general partners transferred goodwill to their partnerships. Each of the limited partnerships *655 prepared offering circulars to disclose all material information to potential investors. The offering circulars expressly allow the general partners to compete with their partnerships in the production of motion pictures with religious themes. While the offering circulars refer to the contribution of film rights by the general partners, there is no reference to the contribution of goodwill. At best, it could be said that the limited partnerships merely used the goodwill of its general partners. Furthermore, even if we were to accept as fact that the general partners contributed goodwill, petitioners have offered no proof of its value. We next consider whether the general partners received their partnership interests in exchange for film rights, services, or some combination of both. The parties do not dispute that the film rights transferred to the partnerships are "property" for purposes of section 721.[4] Instead, the dispute lies in whether petitioners have established the value of the film rights transferred to the partnerships. For complete nonrecognition treatment to apply, the value of contributed film rights must be worth at least the value of the general partnership interests *656 received in exchange. See United States v. Stafford, supra.
As has been often repeated, fair market value is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax Regs. Like other forms of intellectual property, however, film rights are difficult to value in absolute dollars: it has long been realized that each individual intellectual property is unique from all other properties *657 so that the usual methods of determining fair market value, for example, comparison to transactions involving similar properties, etc., are inapplicable. It is no doubt in recognition of this inherent difficulty in valuing intellectual properties that the great majority of intellectual property transactions essentially avoid the valuation problem by setting the price in the form of a royalty based on use of the property by the transferee. * * * Petry, Taxation of Intellectual Property, sec. 6.18[1], p. 6-115 (1988) (reference omitted).)
At trial, Doughten was unable to place an absolute dollar value upon the film rights transferred to the partnerships. Nevertheless, we think that his inability to do so is quite understandable. The uniqueness of the film rights made their fair market value at the time of contribution speculative. The valuation problem was avoided by exchanging the film rights for general partnership interests. Although the difficulty in valuing the film rights is understandable, petitioners still bear the burden of proving that the film rights were contributed in exchange for the general partnership interests. The parties have addressed this issue by focusing on *658 whether the general partners were fully compensated (by means other than the partnership interests) for services rendered to the limited partnerships. If petitioners can prove that they were paid for all services rendered to the partnerships, then they have also proven in effect that the film rights were exchanged for the general partnership interests. The fatal stumbling block for petitioners in meeting their burden of proof is that the reimbursements and fees they received for producing the motion pictures were based upon transactions that they admit were not made at arm's length. There was no written contract between petitioners and their limited partnerships governing the production of the motion pictures. The amounts paid by the limited partnerships were simply based upon what petitioners believed was a reasonable charge for the productions. Accordingly, we cannot conclude that petitioners were fully compensated for all services performed for the limited partnerships. We realize that film rights had some value, but it is petitioners' burden to establish that unknown. Petitioners have left the Court without any basis to ascribe a value to the film rights. Accordingly, we uphold *659 respondent's determination that the general partnership interests were received entirely in exchange for services. II. Were the general partnership interests capital or mere profits interests?
We must next decide whether the general partnership interests were capital interests or mere profits interests. Although section 704(e) does not directly apply to this case, the regulations issued thereunder provide helpful definitions of capital and profits interests: [A] capital interest in a partnership means an interest in the assets of the partnership, which is distributable to the owner of the capital interest upon his withdrawal or upon liquidation of the partnership. The mere right to participate in the earnings and profits of a partnership is not a capital interest in the partnership.
Sec. 1.704-1(e)(1)(v), Income Tax Regs. The pertinent regulation issued under section 721 provides: Normally, under local law, each partner is entitled to be repaid his contributions of money or other property to the partnership (at the value placed upon such property by the partnership at the time of contribution) whether made at formation of the partnership or subsequent thereto. To the extent that any *660 of the partners gives up any part of his right to be repaid his contributions (as distinguished from a share in partnership profits) in favor of another partner as compensation for services (or in satisfaction of an obligation), section 721 does not apply. The value of an interest in such partnership capital so transferred to a partner as compensation for services constitutes income to the partner under section 61. * * *
Sec. 1.721-1(b)(1), Income Tax Regs. The approach suggested by these two regulations has been summarized as follows: a capital interest is defined as any interest which would entitle the holder to receive a share of partnership assets upon a hypothetical winding up and liquidation of the partnership immediately following acquisition of the interest, while a profits interest is any interest which would not entitle the holder to receive assets on an immediate liquidation, but does give the holder the right to share in future partnership profits or earnings.
W. McKee, W. Nelson & R. Whitmire, Federal Taxation of Partnerships and Partners, supra at par. 5.05[1], p. 5-22. See St. John v. United States, 84-1 USTC par. 9158, 53 AFTR2d 84-718 (C.D. Ill. 1983). Petitioners *661 argue that because the partnerships were required under their Articles and Iowa law to repay the limited partners their capital contributions before making any payments to the general partners upon liquidation, they did not receive capital interests in the limited partnerships. Respondent, on the other hand, contends that the limited partners gave up part of their right to be repaid their contributions in favor of the general partners, that the capital interests were compensation for services, and that the amount of compensation equals the fair market values of the interest in capital transferred at the time the transfers were made for services. Paragraph 2.4 of the Articles states that the general partners "shall be entitled to receive Fifty Percent (50%) of the liquidation proceeds of the Partnership in the event of liquidation." Paragraph 9.2 of the Articles requires the liquidation proceeds to be distributed in accordance with the order provided in section 545.42 [5] of the Iowa Code Ann. (West 1950) and, thereafter, between the partners in proportion to the shares of partnership income. Section 545.42 of the Iowa Code provides that the limited partners must be repaid their capital *662 contributions before the general partners. Deciding whether a partner's interest in a partnership is a capital interest, rather than a mere profits interest, turns on whether that partner has the "right to receive" a share of the partnership's assets upon a hypothetical winding up and liquidation immediately following acquisition of the interest, rather than the mere right to share in future partnership earnings or profits. Here, a fair *663 reading of paragraphs 2.4 and 9.2 of the Articles indicates that the general partners had the right to receive a specified share of the partnerships' liquidation proceeds (assets). Thus, even if no partnership proceeds remained to be distributed to the general partners after distributing the liquidating proceeds in accordance with section 545.42, they nevertheless had the right to receive a share of the partnerships' assets. Based on the foregoing, we conclude that the general partners received a capital interest in their respective limited partnerships. See sec. 1.721-1(b)(1), Income Tax Regs.
III. Do the capital interests have determinable market values?
The final issue for decision is whether the capital interests have determinable market values. When a taxpayer contributes services in exchange for a partnership interest, the taxpayer may be required to include the fair market value of the interest in gross income upon receipt. Diamond v. Commissioner, 56 T.C. 530, 545 (1971), affd. 492 F.2d 286 (7th Cir. 1974); Campbell v. Commissioner, T.C. Memo. 1990-162.Section 1.721-1(b)(1), Income Tax Regs., provides that the amount of income included under section 61 "is the fair market *664 value of the interest in capital so transferred * * * at the time the transfer is made for past services." Petitioners contend that the capital interests do not have any determinable market value. Alternatively, they argue that if the section 1.721-1(b)(1), Income Tax Regs., method applies, respondent erred in computing the total value of the capital interests. Petitioners also content that section 83 precludes inclusion of the value of the interests in their income for the years in issue because there existed a substantial risk of forfeiture. Respondent contends that the value of petitioners' respective capital interests is determinable under section 1.721-1(b)(1), Income Tax Regs. Accordingly, respondent calculates the value of petitioners' capital interests by adding together (1) the total capital contributions made by the limited partners, and (2) the value of the film rights transferred by petitioners, and multiplying that amount by each general partner's ownership percentage. Respondent does not assign any value to the film rights and therefore, arrives at the following values: Limited Value of Ownership
Partners
Capital
General Partner
Partnership
Percentage
Contribution * *665 Interest Mark IV
Police Co.
50%
$ 200,000
$ 100,000
Mark IV
Image of the Beast Co.
50%
360,000
180,000
Mark IV
Obedience Co.
50%
285,000
142,500
$ 422,500
Heartland
Brother Enemy Co.
24.5%
266,500
65,293
Heartland
Face in the Mirror Co.
24.5%
325,000
71,785
$ 137,078
Doughton
Brother Enemy Co.
25.5%
266,500
67,957
Doughton
Face in the Mirror Co.
25.5%
325,000
74,715
$ 142,672 We agree with respondent that the value of the capital interests is determinable, that section 1.721-1(b)(1), Income Tax Regs., applies, and that section 83 does not serve to preclude income recognition for the years in issue. However, we agree with petitioners that respondent erred in calculating the value of petitioners' capital interests. Section 83
Under section 83 if property is received "in connection with the performance of services," the person performing the services receives ordinary income in an amount equal to the excess of the fair market value of the interest over the amount, if any, paid for the property, at the earlier of the first time the property becomes (1) freely transferable, or (2) not subject to a substantial risk of forfeiture. Although petitioners were to perform substantial services in the future, the transfer of their capital interest was not conditioned upon their future performance of services. At the time the partnerships were formed, the capital interests vested in petitioners. See sec. 83(c)(1), secs. 1.83-3(b), (c)(1), Income Tax Regs.
Accordingly, we conclude that petitioners' general *666 partner interests were freely transferable and not subject to substantial risk of forfeiture. Value of capital interests
Petitioners received their capital interests in the partnerships in the year the partnerships were formed. However, not all the limited partnership units were sold in the year of formation. Accordingly, after reviewing all the evidence we find that the limited partnership units were sold as follows: Partnership
Year units sold Amount Fiscal year
Amount Police Co.
1979
$ 37,000
1/31/80
$ 48,000
1980
163,000
1/31/81
152,000
Image of the Beast Co.
1980
$ 281,500
1/31/81
$ 360,000
1981
78,500
Obedience Co.
1981
$ 17,000
1/31/82
$ 25,000
1982
195,000
1/31/83
187,000
1983
73,000
1/31/84
73,000
Brother Enemy Co.
1981
$ 266,500
1/31/82
$ 266,500
Face in the Mirror Co.
1981
$ 3,000
1/31/82
$ 3,000
1982
306,000
1/31/83
309,000
1983
16,000
1/31/84
13,000
Thus, petitioners' service income for each of their taxable year(s) in issue must be calculated by considering the year the limited partnership interests were actually sold. Moreover, consideration must be given to the contributions the general partners made in acquiring their limited partnership interest. Based on the foregoing we conclude that petitioners had the following *667 service income for the years in issue: General Partner
Partnership
Taxable year
Income
Mark IV
Police Co.
1/31/80
$ 24,000
Police Co.
1/31/81
65,000
Image
1/31/81
$ 121,750
Obedience Co.
1/31/82
12,500
Doughten
Brother Enemy
12/31/81
$ 48,450
Face in the Mirror
12/31/81
765
Heartland Co.
Brother Enemy
1/31/82
$ 65,292
Face in the Mirror
1/31/82
735
To reflect the foregoing and concessions, Decisions will be entered under Rule 155. Footnotes
1. The following cases were consolidated for trial, briefing, and opinion: Russell S. Doughton, Jr. and Gertrude S. Doughton, docket No. 7748-87; and Heartland Productions, Inc., docket No. 7449-87.↩
2. All Rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue.↩
3. Mark IV purchased limited partnership units as follows: Police Co.
- $  22,000 or 11.00% This represents the percentage of the limited partnership units sold, not the percentage of the partnership. The offering circular provided: Any units which may be purchased by the General Partner as a part of this offering or any units purchased by the General Partner from Limited Partners, as permitted by the Articles, shall be treated for all purposes as are the units held by the Limited Partners, and shall not be subordinated to the interest of the other Limited Partners.
* by 1/31/81
Image of the Beast Co.
- $ 116,500 or 32.36% * by 1/31/81
Obedience Co.
-   148,000 or 69.80% * by 1/31/83
Doughten purchased limited partnership units as follows: ↩
Brother Enemy Co.
- $ 76,500 or 28.70%* in 1981
Face in the Mirror Co.
-   43,000 or 13.03%* in 1982
4. Respondent points out that Doughton actually assigned the film rights and scripts to "Brother Enemy" and "Face in the Mirror" to Brother Enemy Company and Face in the Mirror Company, respectively. Respondent takes this to mean that Heartland never possessed any ownership interest in the film rights and scripts, and thus did not transfer any property to the partnerships. We disagree. The film rights and scripts to "Brother Enemy" and "Face in the Mirror" were owned jointly by Doughton and Heartland. While Doughton actually assigned the film rights and scripts, he did so on his own behalf and↩ on behalf of Heartland as its agent.
5. Section 545.42 of the Iowa Code Ann. (West 1950), repealed in 1982, provides: In settling accounts after dissolution the liabilities of the partnership shall be entitled to payment in the following order: 1. Those to creditors, in the order of priority as provided by law, except those to limited partners on account of their contributions, and to general partners. 2. Those to limited partners in respect to their share of the profits and other compensation by way of income on their contributions. 3. Those to limited partners in respect to the capital of their contributions. 4. Those to general partners other than for capital and profits. 5. Those to general partners in respect to profits. 6. Those to general partners in respect to capital.↩
*. Includes amounts paid by petitioners to purchase limited partnership units.