969 F.2d 669
 70 A.F.T.R.2d 92-5210, 92-2 USTC P 50,365
 MARK IV PICTURES, INC., Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
Russell S. DOUGHTEN, Jr. & Gertrude S. Doughten,
Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
HEARTLAND PRODUCTIONS, INC., Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 91-2063.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 9, 1991.
Decided July 13, 1992.
 
 Ronald L. Sutphin, Des Moines, Iowa, argued, for petitioner-appellant.
 Kimberly S. Stanley, Dept. of Justice, Washington, D.C., argued (Gary R. Allen and Jonathan Cohen, on the brief), for respondent-appellee.
 Before JOHN R. GIBSON and MAGILL, Circuit Judges, and KAUFMAN,* Senior District Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Mark IV Pictures, Inc., Heartland Productions, Inc., Russell S. Doughten Jr. and Gertrude S. Doughten appeal from a decision of the tax court[1] upholding the determination of the Commissioner of the Internal Revenue that they received partnership interests in exchange for performing services rather than giving property, and that the fair market value of those interests constituted income in the years 1980, 1981 and 1982. On appeal, the taxpayers argue that the tax court erred in concluding that: (1) the general partners received partnership interests in exchange for services; (2) the interests received were capital interests rather than profits interests; (3) the interests had determinable market values under 26 C.F.R. § 1.721-1(b)(1); and (4) section 83 of the Internal Revenue Code did not preclude income recognition for the years in question. We affirm.
 
 
 2
 Mark IV, Inc., and Heartland, Inc., incorporated under Iowa law, were involved in the business of producing and distributing motion pictures with religious themes. During the early 1980s, Doughten owned one-half of the stock of Mark IV and also owned stock in Heartland. Doughten was president of both Mark IV and Heartland.
 
 
 3
 Mark IV, as a general partner, formed three limited partnerships under Iowa law--Police Company, Image of the Beast Company, and Obedience Company--for the purposes of producing, distributing, and exhibiting motion pictures with religious themes. Heartland and Doughten, each acting as a general partner, together formed two more limited partnerships--Brother Enemy Company and Face in the Mirror Company--also under Iowa law and for the same purposes.
 
 
 4
 Mark IV, Heartland, and Doughten, who we will refer to as the "general partners," performed similar services and functions for their respective limited partnerships, including funding and forming the partnerships and producing, releasing and distributing the films. Doughten served as a co-writer and executive producer for Mark IV, and as a writer, producer and director for Heartland. The general partners developed or otherwise obtained rights to the original story ideas and prepared scripts for each of the motion pictures before any of the limited partnerships were formed.
 
 
 5
 Each partnership raised funds by selling limited partnership units to investors. Once the limited partnerships were operating, the general partners assigned their films rights to their respective limited partnerships. They did not place dollar values on their original story ideas and scripts, and conducted no arm's-length negotiations. The offering circulars for the limited partnerships stated that in return for the film rights, the partners received partnership interests, with Mark IV getting a 50 percent interest in the profits and a 50 percent interest in the "liquidations proceeds" of the partnerships it helped to form. Heartland and Doughten obtained similar interests of 24.5 percent and 25.5 percent, respectively, in the limited partnerships they helped to form.
 
 
 6
 The limited partnerships also paid the general partners for services rendered in producing the motion pictures. The offering circulars stated that the services were not rendered by the general partners in their general partnership capacities. However, there was no written contract between the general partners and limited partnerships governing the film productions, and the amounts paid by the limited partnerships to the general partners were not the result of arm's-length negotiations but reflected what the general partners believed were reasonable charges for the productions.
 
 
 7
 The limited partnerships also paid their general partners, who again were not acting in their partnership capacities, for arranging the exhibition and distribution of the motion pictures. Each limited partnership agreed to pay its general partner or partners 25 percent of any amounts received by the limited partnership from the distribution or exhibition of its motion pictures. Finally, three of the limited partnerships were to pay one percent of their gross income to the general partners for administrative and related services.
 
 
 8
 The offering circulars for the limited partnerships discussed the partnership interests of the general partners, stating in several places that the general partner (or partners, in the case of Brother Enemy and Face in the Mirror) is entitled to 50 percent of any capital distributions or liquidation proceeds.
 
 
 9
 The Articles of Limited Partnership for each of the partnerships similarly describe the general partners' interests, stating that the general partner or partners "shall participate in profits and losses to the extent of Fifty Percent (50%) thereof" and "shall be entitled to receive Fifty Percent (50%) of the liquidation proceeds of the Partnership in the event of its liquidation." The Articles further state that upon liquidation, the net proceeds shall be distributed "to each Partner in the proportion to which said Partner is entitled to share in the Partnership income."
 
 
 10
 In their 1980, 1981, 1982 tax returns, the general partners reported their assignment of film rights to the partnerships as nontaxable contributions of property for which they received general partnership interests under 26 U.S.C. § 721(a) (1988). The Commissioner of the Internal Revenue issued notices of deficiency, stating that the general partners received capital partnership interests representing additional compensation in exchange for services rendered to the partnerships.
 
 
 11
 The general partners challenged the claimed deficiencies in the tax court, which sustained the Commissioner's determination that the partners had received their interests in exchange for services rather than property. Mark IV Pictures, Inc. v. Commissioner, 60 T.C.M. (CCH) 1171 (1990). The tax court found that the partners had failed to establish the value of the film rights and that the partnership interests were exchanged solely for the film rights. Id. at 1174-75. The tax court stated that if the general partners could have proven that the limited partnerships paid them for all services they performed, then they would have established that the partnership interests were received solely in exchange for property (the film rights). Id. at 1175. The partners were unable to prove that they were fully compensated for their services because their reimbursements and fees were not set as a result of arm's-length transactions. Id. The tax court further held that the partners received capital interests and not merely interests in profits because the Articles of Limited Partnership stated that they had a "right to receive a specified share" of the proceeds upon liquidation. Id. at 1176 (emphasis in original). The tax court also rejected the partners' contention that the partnership interests were not includable in gross income on the ground that they were not freely transferrable and were subject to a substantial risk of forfeiture. Id. at 1177. It then calculated the amount of income to be attributed to each of the partners during the years in question. Id. at 1178. This appeal followed.
 
 I.
 
 12
 The general partners argue that the tax court erred in concluding that they received their general partnership interests in exchange for services rather than property. They contend that they received "full reimbursement" for all costs incurred and "full compensation" for all services performed, and that the interests they received were solely in exchange for the film rights. They assert that although the fees were not set during arm's-length transactions, they were paid the fair market value of their services.
 
 
 13
 Under 26 U.S.C. § 721, no income is recognized when a taxpayer exchanges property for a partnership interest. However, when a taxpayer exchanges services for a partnership interest, he must include the fair market value of that interest in gross income under 26 U.S.C. § 61(a) (1988). See Campbell v. Commissioner, 943 F.2d 815, 821-23 (8th Cir.1991). Similarly, when a taxpayer contributes both property and services to a partnership in exchange for a partnership interest, the taxpayer is entitled to exclude from gross income only that portion of the interest which was exchanged for property. United States v. Stafford, 727 F.2d 1043, 1055 (11th Cir.1984).
 
 
 14
 The taxpayer bears the burden of proving that he contributed property to the partnership and of establishing the property's value at the time of contribution. United States v. Frazell, 335 F.2d 487, 490-91 (5th Cir.1964), cert. denied, 380 U.S. 961, 85 S.Ct. 1104, 14 L.Ed.2d 152 (1965); see Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); Hawkins v. Commissioner, 713 F.2d 347, 353 (8th Cir.1983). Whether a taxpayer contributed property, services, or some combination of the two, is a question of fact that we reverse only if clearly erroneous. See Stafford, 727 F.2d at 1054-55.
 
 
 15
 The partners concede, and the tax court found, that it is difficult to place a dollar value on the film rights. 60 T.C.M. at 1175. The partners thus attempt to establish that the partnership interests must have been received solely in exchange for the film rights by showing that they were fully compensated for all services and were fully reimbursed for all expenses. They rely on statements in the offering circulars declaring that investors' cash contributions would be used to pay for the costs of producing the motion pictures. They also point to Doughten's trial testimony in which he stated that the fees paid represented the general partners' assessment of what were "reasonable charges for the work that we were to do." The partners contend that these two pieces of evidence establish that the general partners were fully compensated for the services they performed.
 
 
 16
 This evidence did not persuade the tax court, which found the "fatal stumbling block" to be the lack of written contracts and arm's-length negotiations. 60 T.C.M. at 1175.
 
 
 17
 The limited evidence cited by the partners does not convince us that the tax court clearly erred in finding that the partnership interests were received in exchange for services. The brief statements in the circulars--which do not discuss how the fees were calculated or the precise services to be rendered--do little to establish that the partners were fully compensated. Doughten's testimony, which was general and conclusory, similarly does not aid the partners in satisfying their burden. Significantly, Doughten also testified that part of the production fees paid to the general partners were to compensate them for the scripts written by Doughten and other employees of Mark IV and Heartland. This testimony thus undermines the partners' contention that the scripts were exchanged for the partnership interests.
 
 
 18
 The tax court found that the "amounts paid [to the general partners] by the limited partnerships were simply based upon what [the general partners] believed was a reasonable charge for the productions." 60 T.C.M. at 1175. (Emphasis in original). We see no reason to conclude that the tax court clearly erred in finding that the partners failed to carry their burden of proving that they received their interests in exchange for services rather than property.
 
 II.
 
 19
 The partners next challenge the tax court's finding that the interests they received were capital interests rather than profits interests. They assert that the tax court erred in concluding that the mere "right to receive" assets upon a hypothetical liquidation is sufficient to confer a capital interest. They maintain that the general partners must be eligible to actually receive assets, and that actual receipt would not occur in this case because no assets would remain for general partners after the required distributions to limited partners.
 
 
 20
 A capital interest received as compensation for services is "a portion of the property contributed to the partnership by the other partners at the value which the property had when it was contributed." 1 Arthur B. Willis, et al., Partnership Taxation § 45.02 at 45-8 (Supp.1992); see 26 C.F.R. § 1.721-1(b)(1). When such an interest is received in return for the performance of services, the value of that interest must be included in the taxpayer's gross income. 26 C.F.R. § 1.721-1(b)(1).
 
 
 21
 The tax court found that the partners received capital interests because they had "the right to receive" shares of the limited partnerships' assets in a hypothetical winding up of the partnerships. 60 T.C.M. (CCH) at 1176. The effect of a hypothetical winding up determines whether a partner's interest is in capital or merely in profits. Id. The tax court found that "the right to receive" assets was the controlling factor in this case, regardless of whether any partnership assets actually would remain to be distributed to the general partners after the required distributions to the limited partners pursuant to the Articles of Limited Partnership and Iowa Code Ann. § 545.42 (1981).[2]
 
 
 22
 We need not decide whether the general partners' "right to receive" assets--regardless of whether any assets remain to be received--constitutes a sufficient basis for finding that the partners possess capital interests, because we conclude that the partners would in fact receive 50 percent of any distribution of capital in a hypothetical liquidation.
 
 
 23
 To determine whether an interest is a capital one, we examine the effects of a hypothetical liquidation occurring immediately after the partners received their interests which, in this case, was the date the partnerships were formed. 1 W. McKee et al., Federal Taxation of Partnerships and Partners, p 5.05 at 5-22 (1977). The general partners assert that in such a liquidation they would receive nothing, because under the terms of Iowa Code Ann. § 545.42, limited partners have priority over general partners in the distribution of assets upon liquidation.[3] Because the assets of limited partnerships, at the time of formation consisted of the cash contributions of the limited partners, and section 545.42 grants priority in payment "to limited partners in respect to the capital of their contributions " (emphasis added), the general partners argue that nothing would be left for them to receive upon liquidation.
 
 
 24
 Their argument overlooks the fact that they were entitled, under the terms of the offering circulars and the Articles, to receive 50 percent of any capital distributions. For example, the offering circular for Police Company, which is essentially identical to the offering circulars for the other limited partnerships, states that the general partner is entitled to receive "50 percent of any distribution of capital." This statement is repeated elsewhere in the circular. The circular also states that the general partner will receive 50 percent of "liquidation proceeds."
 
 
 25
 The Articles of Limited Partnership for all five limited partnerships (which also are essentially identical) similarly reflect the granting of capital interests. Paragraph 2.4 of the Articles states that the general partner is entitled to receive 50 percent of the "liquidation proceeds of the Partnership in the event of its liquidation." Moreover, paragraph 9.2 states that upon liquidation, the net proceeds, after satisfaction of the partnership's liabilities, shall be distributed to each partner "in the proportion to which said Partner is entitled to share in Partnership income."
 
 
 26
 Paragraph 9.2 also states that the payment of liabilities shall be made in the order provided in Iowa Code Ann. § 545.42. In a hypothetical liquidation immediately following formation of the limited partnership, the only distributions to be made under section 545.42 would be first to limited partners "in respect to the capital of their contributions" and then to general partners "in respect to capital." Iowa Code Ann. § 545.42(3) and (6). The tax court's conclusion that no proceeds would remain for distribution to the general partners overlooks the fact that the offering circulars and Articles provide for a shift in capital to occur at the time of the partnerships' formation. Because the limited partners agreed to allow the general partners 50 percent of any distributions of capital, the general partners would be entitled in hypothetical liquidations of the partnerships immediately after formation to a 50 percent share of the limited partners' invested capital.[4]
 
 
 27
 Although we base our conclusion on different grounds than did the tax court, we see no basis for concluding that the tax court clearly erred in finding that the taxpayers received capital interests in the limited partnerships.
 
 III.
 
 28
 The general partners next challenge the tax court's determination of the fair market values of their interests, arguing that those interests should have been valued as of the date of transfer (when the limited partnerships were formed) rather than as of the end of the taxable year. They also challenge the tax court's conclusion that those interests were freely transferable and not subject to a substantial risk of forfeiture.
 
 
 29
 Under 26 C.F.R. § 1.721-1(b)(1), the amount of income that must be recognized when a partnership interest is exchanged for services is "the fair market value of the interest in capital so transferred ... at the time the transfer is made for past services." The tax court determined the amount of income received by each partner by calculating the amount each limited partnership had received in capital contributions as of the end of each taxable year (less the amount of any limited partnership units purchased by the general partners) and multiplying that amount by the fractional interest each general partner held in partnership capital. 60 T.C.M. (CCH) at 1177-78.
 
 
 30
 The tax court's determination of fair market value is a factual finding reviewable only for clear error. Hamm v. Commissioner, 325 F.2d 934, 937 (8th Cir.1963), cert. denied, 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046 (1964). Under the unique factual circumstances of this case, we conclude that the tax court did not clearly err in determining the amounts includable in each partner's gross income. The partners point to no authority stating that in such circumstances the approach they espouse is required.
 
 
 31
 The partners also argue that the tax court erred in concluding that their interests were freely transferable and "not subject to a substantial risk of forfeiture" for purposes of 26 U.S.C. § 83. This argument has no merit.
 
 
 32
 We affirm the decision of the tax court.
 
 
 
 *
 The HONORABLE FRANK A. KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation
 
 
 [1]
 The Honorable Carolyn Miller Parr, Judge of the Tax Court of the United States
 
 
 [2]
 This statute was repealed in 1982, but applies here because all the limited partnerships were formed by 1981. Section 545.42 states:
 Distribution of assets. In settling accounts after dissolution the liabilities of the partnership shall be entitled to payment in the following order:
 
 
 [3]
 those to limited partners in respect to the capital of their contributions
 
 
 [6]
 those to general partners in respect to capital
 
 
 [3]
 See footnote 1 for the relevant portions of the statute
 
 
 [4]
 This type of shift in capital is recognized in 26 C.F.R. § 1.721(b)(1). Although Iowa Code Ann. § 545.42 requires that limited partners must first be repaid their contributions, the statute must give way to a contrary or modifying provision in the parties' agreements. See Porter v. Barnhouse, 354 N.W.2d 227, 233 (Iowa 1984) (stating that the "general import" of section 545.42 is that limited partners share in partnership assets in proportion to the respective amount of their claims unless other priorities among limited partners have been set up in the partnership agreement (citing Norman D. Lattin, The Law of Corporations, § 7 at 42 (1971))); see also 2 Zolman Cavitch, Business Organizations, § 39.09 (1991). Under the Uniform Limited Partnership Act § 23, on which section 545.42 is based, an agreement between the parties that is not prohibited by state law or considerations of public policy controls distribution of assets upon liquidation, even though the statute may provide for something different. Cavitch, supra, at 39.09